Filed 9/11/24  P. v. Major CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>BRIAN KEITH MAJOR,<br><br>        Defendant and Appellant. | B329008<br><br>(Los Angeles County<br>Super. Ct. No. SA003146)<br><br>ORDER MODIFYING OPINION AND DENYING REHEARING<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion in the above-entitled matter filed on September 6, 2024, be modified as follows:

1.      In the final paragraph on page 7, the following quoted instruction is deleted:  "One who aids and abets is not only guilty of the particular crime that to [his] knowledge [his] confederates are contemplating committing, but [he] is also liable for the natural and probable consequences of any criminal act that [he] knowingly and intentionally aided and abetted. You must determine whether the defendant is guilty of the crime

originally contemplated, and, if so, whether the crime charge [in Count 1] was a natural and probable consequence of such originally contemplated crime."

2. The following image is inserted on page 7 in the place of the deleted text:



3. On page 8, the following text in the last sentence of the first full paragraph is deleted: "For purposes of this appeal only, we credit this argument and rely only on the written instruction which we have quoted above."

4. The following sentence is inserted in its place: "Although we find no discrepancy between the oral and written instruction, for purposes of this appeal only, we assume, as Major

2

argues, that the instruction on natural and probable consequences applied to both the murder and attempted murder counts." [Footnote 5 remains at the end of the paragraph.]

Appellant's petition for rehearing is denied. There is no change in judgment.

_____

ROTHSCHILD, P. J.          BENDIX, J.          WEINGART, J.

Filed 9/6/24  P. v. Major CA2/1 (unmodified opinion)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B329008 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. SA003146) |
| v. | |
| BRIAN KEITH MAJOR, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Kathyrn A. Solorzano, Judge.  Affirmed.

James S. Donnelly-Saalfield, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Nikhil Cooper, Deputy Attorneys General, for Plaintiff and Respondent.

_____

In 1991, a jury convicted petitioner Brian Keith Major of murder and attempted murder and found that he committed both crimes willfully and with premeditation and deliberation. The jury also found the murder was committed while lying in wait, found true that Major personally used a firearm in connection with the murder and attempted murder, and found true he inflicted great bodily injury on the attempted murder victim. The trial court sentenced Major, inter alia, to life without the possibility of parole for the murder and to life with the possibility of parole for the attempted murder.

In 2022, Major petitioned for resentencing pursuant to Penal Code section 1172.6.[1] After appointing counsel for Major, the resentencing court denied his petition at the prima facie stage.

On appeal, Major argues the trial court erred in relying on the factual recitation in our opinion on Major's direct appeal and the jury could have convicted him based on the natural and probable consequences doctrine. He also contends his trial counsel rendered ineffective assistance when counsel conceded Major was ineligible for resentencing on the attempted murder count.

We review the order denying resentencing de novo and conclude, as a matter of law, that the jury found all elements of murder and attempted murder as currently defined. The jury instructions and jury verdict foreclose Major's contention that the jury could have convicted him based on the now invalid natural and probable consequences doctrine. Because we have considered the record de novo, we do not address whether defense counsel

---

[1] Undesignated statutory citations are to the Penal Code.

2

provided ineffective assistance in conceding Major was ineligible for resentencing relief on his attempted murder conviction.

In sum, we affirm the resentencing court's order denying Major's petition.

## BACKGROUND

We summarize below only those facts relevant to the issues on appeal. This summary is limited to providing context because we rely only on the jury verdict and jury instructions to conclude Major is ineligible for resentencing as a matter of law.

1. ***A jury convicted Major of murder and attempted murder***

In an information filed August 30, 1990, the People alleged Major murdered Diondra Ann Picou. The People further alleged Major "intentionally killed the victim while lying in wait . . . ." and that he personally used a firearm. The People also alleged Major attempted to murder N. Arellano and that the attempted murder was willful, with premeditation and deliberation, and Major personally used a firearm and personally inflicted great bodily injury on Arellano.

Major was the sole defendant at trial. Arellano testified she did not see the person shooting the gun. At trial, the parties stipulated that as a result of the shooting, Arellano suffered great bodily injury. Neither party disputed that Picou died of a gunshot wound. R.J., a juvenile who pleaded guilty to being an accessory after the fact, testified he saw Major shoot Picou and Arellano. R.J. further testified Major and he drove to R.J.'s house, where there was a gun. Major told R.J. that his boss was planning to fire him because Major was sleeping at work. Major said he was going to kill his supervisor. R.J. testified Major had

the gun when they drove back to the hospital where Major worked; R.J. identified the gun at trial. R.J., however, had the gun in his pants when they entered the hospital. R.J. later gave Major the gun and Major put it in a wall in the hospital. Later that night, Major shot the gun and then handed the gun and his car keys to R.J. R.J. left the hospital and put the gun in a plastic bag and then in a sewer. During cross-examination, R.J. denied being the shooter. R.J. admitted he previously lied to police, telling the police that he never saw Major with the gun. On cross-examination, he admitted he would lie to protect himself.[2]

In January 1991, the jury convicted defendant of murder with findings of lying in wait and personal use of a firearm and attempted murder with findings of personal use of a firearm and personal infliction of great bodily injury. (*People v. Major* (Jan. 29, 1993, B059105) [nonpub. opn.] at p. 2.) The trial court sentenced Major to life without the possibility of parole for the murder and to life with the possibility of parole for the attempted murder.[3] We affirmed the judgment of conviction. (*Major*, at p. 19.)

---

[2] During closing argument, defense counsel attacked R.J.'s credibility and argued the only way to believe "Major was the shooter in this particular case" was to credit R.J.'s testimony. The prosecutor argued if R.J. were the shooter, the jury could not find Major personally used the firearm or personally inflicted great bodily injury.

[3] For the murder, the court sentenced Major to life without the possibility of parole and a four-year term on the firearm enhancement. For the attempted murder, the court sentenced Major to life with the possibility of parole plus four years for the firearm enhancement and three years for the great bodily injury

## 2.    *The court's jury instructions*

Because the jury instructions are central to the issues on appeal, we quote them extensively.

### a.    *Instructions on the elements of murder and attempted murder*

The court instructed the jury on murder as follows:  "Every person who unlawfully kills a human being with malice aforethought is guilty of the crime of murder in violation of Section 187 of the Penal Code.  [¶]  In order to prove such crime, each of the following elements must be proved:  [¶]  1.  A human being was killed.  [¶]  2.  The killing was unlawful, and [¶] 3.  The killing was done with malice aforethought."  The court also defined malice aforethought.

The trial court instructed the jury on only one theory of first degree murder, that is, a deliberate and premeditated killing:  "All murder which is perpetrated by any kind of willful, deliberate and premeditated killing with express malice aforethought is murder of the first degree.  [¶]  The word 'willful,' as used in this instruction, means intentional.  [¶]  The word 'deliberate' means formed or arrived at or determined upon as a result of careful thought and weighing of considerations for and against the proposed course of action.  The word 'premeditated' means considered beforehand.  [¶]  If you find that the killing was preceded and accompanied by a clear, deliberate intent on the part of the defendant to kill, which was the result of deliberation and premeditation, so that it must have been formed

enhancement.  The court stayed the firearm enhancement on the murder.  The court ordered the sentences to run consecutively.

5

upon pre-existing reflection and not under a sudden heat of passion or other condition precluding the idea of deliberation, it is murder of the first degree.  [¶] . . . [¶]  To constitute a deliberate and premeditated killing, the slayer must weigh and consider the question of killing and the reasons for and against such a choice and, having in mind the consequences, [he] decides to and does kill."

The court also instructed the jury on the following elements of attempted murder:  "1.  A direct but ineffectual act was done by one person towards killing another human being; and [¶] 2.  The person committing such act harbored express malice aforethought, namely, a specific intent to kill unlawfully another human being."  The court further instructed the jury, "If you find that the attempt to commit murder was preceded and accompanied by a clear, deliberate intent to kill, which was the result of deliberation and premeditation, so that it must have been formed upon pre-existing reflection and not under a sudden heat of passion or other condition precluding the idea of deliberation, it is attempt to commit willful, deliberate, and premeditated murder."  "To constitute willful, deliberate, and premeditated attempt to commit murder, the would-be slayer must weigh and consider the question of killing and the reasons for and against such a choice and, having in mind the consequences, decides to kill and makes a direct but ineffectual act to kill another human being."

Finally, the court instructed the jury that to convict Major of murder, "you must find beyond a reasonable doubt that the defendant was either the actual killer or that he aided and abetted the actual killer as defined in these instructions.  It is not

6

required that all twelve of you agree upon one theory or the other."

### b. *Natural and probable consequence instruction*

The trial court instructed the jury on accomplice liability, including an instruction on the natural and probable consequences doctrine. Defense counsel objected to the instructions on accomplice liability arguing that all of the prosecution witnesses "link Mr. Major [to] being the shooter . . . . I don't see any evidence whereby the People can say, yes, we presented evidence to you for you to believe that [R.J.] is the shooter in this case." The court responded, "Well, the only evidence in this case is either the defendant was the shooter or [R.J.] was the shooter; right?" Defense counsel responded that the People "aren't saying that [R.J.] was the shooter in this case." The court replied, "But you are."

The centerpiece of Major's argument is the following instruction on the natural and probable consequences doctrine: "One who aids and abets is not only guilty of the particular crime that to [his] knowledge [his] confederates are contemplating committing, but [he] is also liable for the natural and probable consequences of any criminal act that [he] knowingly and intentionally aided and abetted. You must determine whether the defendant is guilty of the crime originally contemplated, and, if so, whether the crime charge [in Count 1] was a natural and probable consequence of such originally contemplated crime."

The court, however, did not instruct the jury on any such "originally contemplated crime" or target offense.[4]

In his reply brief on appeal, Major argues there is a discrepancy between the trial court's oral and written instruction in that the oral instruction applied the natural and probable consequence only to the murder count whereas the written instruction does not specify any count. Major argues this court should consider the written instruction. For purposes of this appeal only, we credit this argument and rely only on the written instruction, which we have quoted above.[5]

> c.     *Instructions on the firearm and great bodily injury enhancements and the lying in wait special circumstance*

As to the firearm enhancement, the trial court instructed the jury that to find personal use of a firearm, it had to find Major intentionally fired the firearm. Specifically, the court

---

[4] The trial predated *People v. Prettyman* (1996) 14 Cal.4th 248, which held that trial courts must instruct on the target offense.

[5] The trial court also instructed the jury on transferred intent because the victim of the murder count was not Major's supervisor. The attempted murder victim, Arellano was his supervisor, and the murder victim, Picou, was Arellano's assistant and in the same room at the time of the shooting. In the prior appeal, we concluded that the transferred intent instruction "was essentially irrelevant to the jury's findings" because "the murder was prosecuted strictly on a theory of premeditation . . . [and therefore] required a finding that appellant intended to kill." (*People v. Major, supra*, B059105 at p. 8.)

8

instructed the jury in relevant part: "If you find the defendant guilty of [one or both] of the crime[s] charged, you must determine whether the defendant personally used a firearm in the commission of such felony[ies]." "The term 'used a firearm,' as used in this instruction, means to intentionally to [*sic*] fire it." The court further instructed the jury: "The People have the burden of proving the truth of this allegation. If you have a reasonable doubt that it is true, you must find it to be not true."

When discussing the instructions, the trial court indicated it would ask the jury to make a special finding as to whether Major was the shooter or an aider and abettor. The prosecutor stated the personal use of a firearm allegation would reveal the jury's theory and the court agreed.

Regarding the infliction of great bodily injury enhancement, the court told the jury: "It is alleged in Count 2 [attempted murder] that in the commission of the crime therein described the defendant with the specific intent to inflict such injury, personally inflicted great bodily injury on [N.] Arellano. [¶] If you find the defendant guilty of Count 2, you must determine whether or not the defendant, with the specific intent to inflict such injury, did personally inflict great bodily injury, on [N.] Arellano in the commission of attempted murder. [¶] 'Great bodily injury' as used in this instruction means a significant or substantial physical injury."

Finally, the trial court instructed the jury on disregarding instructions that would not apply to the facts the jury found: "The purpose of the court's instructions is to provide you with the applicable law so that you may arrive at a just and lawful verdict. Whether some instructions apply will depend upon what you find

9

to be the facts.  Disregard any instruction which applies to facts determined by you not to exist."

### 3. *The resentencing court denies Major's resentencing petition*

After Major petitioned for resentencing, the resentencing court appointed counsel for him.  In his brief, counsel argued Major made a prima facie showing of eligibility as to the murder conviction.  According to Major, "Nothing in the record of conviction" undermined Major's allegations in his petition.  Major argued the court therefore must accept as true the petition and issue an order to show cause.

At the hearing, defense counsel represented Major was ineligible for resentencing for attempted murder because the jury found true the great bodily injury enhancement regarding that count.  Counsel, however, asked the trial court to issue an order to show cause as to the murder conviction.

The resentencing court found Major had not made a prima facie case as to either count and thus was not eligible for resentencing.  The court recognized it had instructed the jury on the natural and probable consequences doctrine.  The court, however, emphasized the jury found premeditation and deliberation.  The court indicated just one person fired a firearm in this case and Major's defense was that someone else fired the gun.  The court recognized that a true finding on use of a firearm does not equate to intent to kill but reiterated the jury found both crimes were committed with premeditation.  The court emphasized it was not "weighing . . . facts."  The court allowed additional argument and defense counsel contended that by referencing the appellate opinion, the court "weighed into the Court of Appeal facts . . . ."  Ultimately, the resentencing court

found, "[T]he jury by necessity had to find that he premeditated, the defendant premeditated" and for that reason the prima facie case had not been made.

## DISCUSSION

We review the resentencing court's prima facie inquiry de novo. (*People v. Williams* (2022) 86 Cal.App.5th 1244, 1251; *People v. Lee* (2023) 95 Cal.App.5th 1164, 1174.)

### A. Legal Principles Relevant to Major's Resentencing Petition

Prior to Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Stats. 2018, ch. 1015, § 4), under the natural and probable consequences doctrine, a defendant could be liable not only for the crime he intended to commit with his confederate (the target crime), but also for any other offense (nontarget crime) "committed by the confederate as a 'natural and probable consequence' of the crime originally aided and abetted." (*People v. Prettyman*, *supra*, 14 Cal.4th at pp. 254, 262–263.) Under that now defunct doctrine, the mens rea of the aider and abettor regarding the nontarget crime was " 'irrelevant' " even if the nontarget crime was murder. (*People v. Chiu* (2014) 59 Cal.4th 155, 164.)

Senate Bill No. 1437 eliminated the natural and probable consequences doctrine for first and second degree murder. (*People v. Gentile* (2020) 10 Cal.5th 830, 851.) Specifically, it amended section 188 to provide: "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).)

11

The Legislature enacted former section 1170.95, now numbered section 1172.6,[6] which provides a mechanism for petitioners to seek retroactive resentencing if they could no longer be convicted of murder, attempted murder, or manslaughter under the amended Penal Code. (See *People v. Lee, supra,* 95 Cal.App.5th at pp. 1173–1174.) The statute provides in part: "(a) A person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter may file a petition with the court that sentenced the petitioner to have the petitioner's murder, attempted murder, or manslaughter conviction vacated and to be resentenced on any remaining counts when all of the following conditions apply: [¶] (1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine. [¶] (2) The petitioner was convicted of murder, attempted murder, or manslaughter following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder. [¶]

---

[6] As originally enacted in 2018, section 1170.95 applied only to a "person convicted of felony murder or murder under a natural and probable consequences theory . . . ." (Former § 1170.95, subd. (a).)

12

(3) The petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a).)

If a petitioner makes a prima facie showing of relief under section 1172.6—that is, a showing that the petitioner was convicted of murder, attempted murder, or manslaughter under a theory no longer valid under the amended Penal Code—the resentencing court must issue an order to show cause for an evidentiary hearing. (§ 1172.6, subd. (c); *People v. Hurtado* (2023) 89 Cal.App.5th 887, 891.) If "the record of conviction or the court's own documents indicate the petitioner is ineligible for resentencing as a matter of law, the resentencing court may deny the petition without issuing an order to show cause." (*People v. Lee, supra*, 95 Cal.App.5th at p. 1174.) "In relying on the record of conviction at the prima facie stage, however, the resentencing court 'should not engage in "factfinding involving the weighing of evidence or the exercise of discretion." [Citation.]' [Citation.]" (*Ibid.*)

*People v. Curiel* (2023) 15 Cal.5th 433 recently clarified the trial court's role at the prima facie stage: "At the prima facie stage, a court must accept as true a petitioner's allegation that he or she could not currently be convicted of a homicide offense because of changes to Section 188 or 189 made effective January 1, 2019, unless the allegation is refuted by the record. [Citation.] And this allegation is not refuted by the record unless the record conclusively establishes every element of the offense. If only *one* element of the offense is established by the record, the petitioner could still be correct that he or she could not currently be convicted of the relevant offense based on the absence of *other* elements." (*Curiel*, at p. 463.)

13

## B. Applying *Curiel*, We Conclude That As a Matter of Law, Major Is Ineligible for Resentencing on His Murder and Attempted Murder Convictions

As instructed by *Curiel,* we consider whether as a matter of law, the jury found every element of murder and attempted murder as those crimes are currently defined. "Murder is the unlawful killing of a human being . . . with malice aforethought." (§ 187, subd. (a).) The instruction on murder required the jury to find that a human being was killed and the killing was unlawful. The jury found Major was the killer when it concluded he intentionally fired the firearm in the commission of the murder. Put differently, the firearm instruction allowed the jury to find the firearm enhancement true only if it also found Major shot the firearm. (See *People v. Garrison* (2021) 73 Cal.App.5th 735, 747 [admission to personal use of a handgun in commission of the murder showed that petitioner was the actual killer].)

The jury found that Major acted with malice aforethought when it found that he acted willfully and with premeditation and deliberation, the only theory of first degree murder before it. Specifically, the first degree murder instruction provided: "If you find that the killing was preceded and accompanied by a clear, deliberate intent on the part of the defendant to kill, which was the result of deliberation and premeditation, so that it must have been formed upon pre-existing reflection and not under a sudden heat of passion or other condition precluding the idea of deliberation, it is murder of the first degree."

As to the attempted murder conviction, "the prosecution must establish 'the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing.' [Citation.]" (*People v. Canizales* (2019) 7 Cal.5th 591,

14

602.)  Here, the jury found Major harbored intent to kill when it found the attempted murder was willful, deliberate and premediated.  The attempted murder instruction also required that the jury find Major "harbored express malice aforethought, namely, a specific intent to kill unlawfully another human being." The jury further found Major personally and intentionally fired a firearm and personally inflicted great bodily injury on Arellano in the commission of the attempted murder.  Personally firing a firearm is a direct but ineffectual act toward accomplishing the intended killing.

The jury could not have relied on the natural and probable consequence theory for either the murder or attempted murder because the trial court instructed the jury that the natural and probable consequence theory applied only to an aider and abettor. Here, the jury found that Major was the shooter, not an aider and abettor in the shooting.  Further, the court instructed the jury to disregard instructions that do not apply.  We presume the jury followed the court's instructions.  (*People v. Sanchez* (2001) 26 Cal.4th 834, 852.)

## C.    Major's Arguments Do Not Support Error

Major argues, "The order denying Mr. Major's section 1172.6 petition must be reversed because the jury was instructed on the natural and probable consequences doctrine and nothing in the record rules out the possibility that it relied upon this theory in convicting Mr. Major of first degree murder." (Some capitalization omitted.)

Major also argues he received ineffective assistance of counsel when his defense counsel conceded Major was not entitled to resentencing on the attempted murder.

15

These arguments do not evaluate the instructions taken as a whole. None of his arguments demonstrates the jury could have convicted Major on a natural and probable consequences doctrine. As explained above, the natural and probable consequence doctrine applied only to an aider and abettor and the jury found Major was the shooter, not an aider and abettor.

Major argues the absence of an instruction on the target offense does not rule out reliance on the natural and probable consequence doctrine. That argument is irrelevant because the finding that Major was the shooter, not an aider and abettor, rules out reliance on the natural and probable consequence doctrine.

Similarly, Major argues an instruction that the jury did not have to agree whether defendant was the killer or aided and abetted the killer "does not rule [out the] possibility that the jury relied upon the natural and probable consequences doctrine." The jury, however, found that Major was the shooter, not an aider and abettor. Thus, the instruction on the natural and probable consequences doctrine did not apply, and again, the jury was instructed to disregard instructions that were inconsistent with its findings of fact.

Major contends the true finding of lying in wait does not necessarily preclude resentencing. That proposition is off the mark because we have not relied on that finding in concluding Major is ineligible for resentencing.

Major cites *People v. Offley* (2020) 48 Cal.App.5th 588 for the proposition that his personal use of a firearm does not translate into ineligibility for resentencing as a matter of law. (*Id*. at p. 599.) In *Offley*, we explained the firearm use enhancement does not establish "by itself" that the person who

16

used the firearm acted with malice aforethought.  (*Id.* at pp. 592, 598.)  In the same vein, *In re Ferrell* (2023) 14 Cal.5th 593 held a firearm enhancement was not dispositive of whether the defendant harbored malice aforethought because it does not encompass a finding on the defendant's mental state.  (*Id.* at p. 604.)  In *Offley*, however, we further explained, "In many instances, additional information from the record will establish that a defendant's conviction was not based on the natural and probable consequences doctrine, and that the jury must have convicted the defendant on the basis of his own malice aforethought."  (*Id.* at p. 599.)

Here, we have not relied on the firearm enhancement to assess Major's mental state.  We have instead relied on the jury's findings on both counts that Major acted willfully and with premeditation and deliberation.  Based on those findings, we conclude the jury necessarily found Major acted with malice aforethought.  In addition, as noted above, as to attempted murder, the jury had to have found Major harbored malice aforethought.

Major asserts the resentencing court improperly relied on the factual summary in his appeal from his conviction.  We have reviewed Major's eligibility de novo without relying on the factual summary in the prior appellate opinion.  We have concluded based on the jury instructions and jury verdict that as a matter of law, Major is ineligible for resentencing.

Because we have considered Major's eligibility for resentencing on his attempted murder conviction on the merits, we do not address Major's argument that his defense counsel rendered ineffective assistance of counsel in the trial court by

17

conceding Major was ineligible for resentencing on the attempted murder conviction.

## DISPOSITION

The order denying Brian Keith Major's petition for resentencing is affirmed.

<u>NOT TO BE PUBLISHED.</u>

BENDIX, J.

We concur:

ROTHSCHILD, P. J.

WEINGART, J.

18